*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Parole of EVANS KARSON, JR.

---

| | |
|---|---|
| AK, | UNPUBLISHED |
| | December 14, 2023 |
| Appellee, | |
| | |
| v | No. 365926 |
| | Wayne Circuit Court |
| EVANS KARSON, JR., | LC No. 21-014726-AP |
| | |
| Appellant, | |
| | |
| and | |
| | |
| PAROLE BOARD, | |
| | |
| Intervenor. | |

---

Before: LETICA, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

Evans Karson, Jr., appeals by leave granted[1] the trial court's order reversing the decision of the Michigan Parole Board (the Board) to grant parole to Karson. We reverse.

## I. BACKGROUND

On June 25, 2012, Karson was convicted by a jury of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(b) (victim between 13 and 16 and is a member of the same household as defendant), disseminating sexually explicit material to a minor, MCL 722.675, and using a computer to commit a crime, MCL 752.797(3)(c). Defendant was sentenced as a second-

---

[1] *In re Parole of Karson*, unpublished order of the Court of Appeals, entered June 14, 2023 (Docket No. 365926).

-1-

offense habitual offender, MCL 769.10, to 10 to 22½ years' imprisonment for CSC-II, one to three years' imprisonment for disseminating sexually explicit material to a minor, and two to six years' imprisonment for using a computer to commit a crime. The CSC-II charge involved Karson digitally and orally penetrating his adopted minor daughter, AK, from 2004 until 2009. The other two convictions arose from Karson forcing AK to view pornographic movies and websites, and hide pornographic images on her computer.

In February 2021, Karson was considered for parole. He had a parole-guidelines score of +5, indicating a high probability of parole. Despite this score, the Board denied Karson parole on February 9, 2021, because he had not completed a program designed to address his aggressive nature, he minimized his criminal behavior, and he did not take responsibility for his actions.

In June, 2021, Karson completed a Violence Prevention Program (VPP). Following this improvement, the Board reconsidered Karson for parole. On September 14, 2021, the Board granted Karson parole because it believed that it now had adequate assurances that Karson would not become a menace to society or public safety if paroled.

It was subsequently discovered that Karson's parole-guidelines score was inaccurate; Karson's parole-guidelines score was +5, but it should have been +2. With Karson's prior score of +5—which again gave him a high probability of parole—the Board had discretion to deny Karson parole only if it had substantial and compelling objective reasons. See MCL 791.233e(6). With Karson's corrected parole-guidelines score of +2, he had an average probability of parole, and the Board did not need substantial and compelling objective reasons to deny parole. When the Board was presented with the correction to Karson's score, however, the Board summarily stated that the change did not alter its decision.

AK appealed the Board's decision to the circuit court. That court concluded that the Board abused its discretion by granting Karson parole because nothing had changed in Karson's situation from when the Board denied him parole in February 2021 to when the Board granted him parole in September 2021 except for his completion of the VPP.

Karson filed an application for leave to appeal the circuit court's decision in this Court. In lieu of granting leave to appeal, this Court vacated the circuit court's order, remanded the case to the Board, and ordered the Board to provide an explanation regarding why, in light of the change in Karson's parole-guidelines score, parole was still warranted. *In re Parole of Evans Karson, Jr*, unpublished order of the Court of Appeals, entered November 18, 2022 (Docket No. 362262).

On remand, the Board produced a list of reasons explaining why it granted Karson parole. AK then challenged the Board's reasoning in the circuit court again, arguing that the Board merely restated its original reasons for granting parole and failed to provide any additional explanation. The Board and Karson filed briefs in response, arguing that the Board had provided a sufficient explanation justifying its decision. The circuit court agreed with AK and again reversed the Board's decision to grant Karson parole.

This appeal followed.

## II. STANDARD OF REVIEW

On appeal, Karson challenges the circuit court's ruling overturning the Board's decision to grant parole to Karson.

The Board's decision to grant parole to a prisoner can only be reversed if a reviewing court concludes that the Board's decision amounted to "a clear abuse of discretion" or "violated the Michigan Constitution, a statute, an administrative rule, or a written agency regulation." *In re McBrayer*, 511 Mich 403, 412; ___ NW2d ___ (2023) (cleaned up). This standard entitles the Board's decision to "great deference," *id*. at 416, and a reviewing court may not substitute its judgment for that of the Board's, *In re Wilkins*, 506 Mich 937, 937 (2020). This standard is the same for the circuit court and the Court of Appeals. *In re McBrayer*, 511 Mich at 412. "It is the judgment of the Parole Board, not the circuit court, that is entitled to deference . . . ." *In re Wilkins*, 506 Mich at 937.

## III. ANALYSIS

Karson argues that the Board did not abuse its discretion by maintaining its grant of parole to Karson, even after Karson's parole-guidelines score was corrected. We agree.

Whether to grant or deny parole lies solely within the broad discretion of the Board. *Jones v Dep't of Corrections*, 468 Mich 646, 652; 664 NW2d 717 (2003). The exercise of that discretion is largely guided by the parole guidelines. Those "guidelines set out factors—such as criminal history, type of offense, conduct in prison, mental health, and age—for determining whether a prisoner merits parole." *In re McBrayer*, 511 Mich at 413. Parole-eligible prisoners receive scores based on these factors, and those scores place the prisoner into one of three categories: high probability of parole, average probability of parole, and low probability of parole. *Id*.

As previously stated, Karson was originally granted parole after his parole-guidelines score reflected a high probability of parole. That score was erroneous, however, and Karson's actual parole-guidelines score placed him in the average-probability-of-parole category. Despite this change, the Board issued a statement summarily stating that the "new information does not change previous decision." This explanation in light of the change in Karson's parole-guidelines score was insufficient, according to a panel of this Court, because the change in Karson's parole-guidelines score affected "the entire framework for determining whether to grant parole, see MCL 791.233e(6) and (7)." *In re Parole of Evans Karson*, unpublished order of the Court of Appeals, entered November 18, 2022 (Docket No. 362262). Thus, this Court remanded this case to the Board for it to provide an explanation for "why in light of the correction of Mr. Karson's parole guidelines, granting parole is still justified." *Id*. On remand, the Board complied with this Court's order and provided a list of reasons for its decision to maintain its grant of parole to Karson.

The Board's reasons for maintaining its grant of parole to Karson were based primarily on factors that the Board was required to consider under MCL 791.233e. These included Karson's criminal history, see MCL 791.233e(2)(d); institutional behavior and programing, see MCL 791.233e(2)(b) and (c); institutional risk assessments, see MCL 791.233e(3)(a); and an interview. The Board explained that it did not conduct a second interview with Karson after his parole-guidelines score was adjusted because the parole-score change did not necessitate one. The Board

also explained that Karson's sex-offender-recidivism risk was low, and placing a low-risk prisoner into sex-offender treatment could actually increase the risk of recidivism. Additionally, the Board noted that Karson successfully completed the VPP, demonstrated good conduct while in prison apart from a fight in 2019, and his parole was subject to multiple conditions, including GPS monitoring. The Board concluded by stating that the "cumulative effect of these factors and the Board's experience and discretion resulted in the Board determining that there was reasonable assurance that the prisoner would not become a menace to society or public safety [i]f paroled."

When reversing the Board's decision, the circuit court stated that the Board's explanation amounted to "regurgitating prior factors" that the Board had relied on in its previous decision granting parole to Karson. The court reasoned that, in its "assessment of each of those points and in the totality," the court was not "convinced" that the Board's reasons "justifie[d]" its "decision to continue with a grant of parole." The circuit court emphasized that it had previously reversed the Board's decision to grant parole to Karson, and it believed that the Board had not adequately addressed the court's previously-stated concerns. In its prior ruling, the circuit court reasoned that the Board erred by granting parole to Karson "because he still presents a significant danger to the community, family members, and the victims." To support this conclusion, the circuit court relied on the fact that the Board had denied Karson parole only months before it granted him parole, and the court believed that Karson's only progress during that time was his completion of the VPP.

The circuit court erred by concluding that the Board abused its discretion by granting Karson parole. Based on the circuit court's statements, it appears that the circuit court simply substituted its judgment for that of the Board's. The circuit court reasoned that the Board abused its discretion by granting Karson parole because, based on the circuit court's own "assessment" of the Board's reasons for granting parole, the court was not "convinced" that the Board's reasons "justifie[d]" its decision to grant parole. But the question for the circuit court was not whether the Board's decision to grant parole was "justifie[d]"; it was whether the Board's decision to grant parole was within the range of reasonable and principled outcome. See *In re McBrayer*, 511 Mich at 416 ("Consistently with the default definition of that standard, the Parole Board abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes."). In a similar vein, the circuit court's own "assessment" of the factors considered by the Board was irrelevant; it was the Board's task to assess the pertinent factors and render a decision, and it was the circuit court's task to review that decision. In so doing, the circuit court did not need to independently assess the factors considered by the Board and decide whether *the court* would grant parole. Rather, the court's review was limited to whether the Board abused its discretion. See *id*. ("[W]e reiterate that reviewing courts must not substitute their own judgment for that of the board.").

The only discernable reason given by the circuit court for reversing the Board's decision to grant Karson parole is the fact that the Board had denied Karson parole just months before, and all that had changed in that time was that Karson completed the VPP. Yet it is not apparent how this renders the Board's decision to grant Karson parole an abuse of discretion. It is true that the Board denied Karson parole just months before it granted Karson parole. And accepting as true

-4-

that the only change in those months was that Karson completed the VPP,[2] it is still unclear why that renders the Board's decision an abuse of discretion. The Board previously denied parole to Karson in part due to his failure to participate in a program designed to address his aggressive nature. Karson then participated in the VPP—a program designed to address his aggressive nature. With Karson having remedied one of the reasons identified by the Board for denying Karson parole, it was reasonable for the Board to reach a different conclusion when it reconsidered paroling Karson.[3]

To summarize, the Board adequately explained why it granted parole to Karson. It detailed how it considered the statutorily-mandated parole guidelines as part of its parole-decision process, and how its consideration of those factors, as well as its experience, led it to conclude that Karson should be paroled. When the circuit court reversed the Board's decision, it did so not because the Board abused its discretion but because the court substituted its judgment for that of the Board's. This was improper and warrants reversal. We therefore reverse the judgment of the circuit court and reinstate the Board's grant of parole.

Reversed. This judgment is given immediate effect pursuant to MCR 7.215(F)(2).

/s/ Anica Letica
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron

---

[2] For clarity, however, it is not true that Karson *only* completed the VPP in the months from when he was denied parole to when he was granted parole. In that time, Karson also demonstrated that he was taking responsibility for the crimes of which he was convicted, and the Board had previously denied Karson parole for not doing so.

[3] We note that the circuit court appeared to independently weigh the importance of Karson's participation in the VPP in yet another example of the circuit court substituting its judgment for that of the Board's. The circuit court minimized the importance of Karson's participation in the VPP, while the Board did not.

-5-